## County of Madison v. William A. Haskell.

1. Counties—*Liable for Aid Furnished to Persons Injured.*—A phy-
sician who renders medical aid to persons injured by an explosion when
the emergency is such as to warrant an immediate action without wait-
ing to confer with the proper officials, may recover of the county a rea-
sonable compensation for his services.

**Assumpsit,** for services rendered. Appeal from the Circuit Court of
Jersey County; the Hon. George W. Herdman, Judge, presiding.
Heard in this court at the May term, 1895. Affirmed. Opinion filed
December 6, 1895.

E. B. Glass and Krome & Terry, attorneys for appellant.

Alexander W. Hope and Henry S. Baker, Jr., attorneys
for appellee.

Mr. Presiding Justice Pleasants delivered the opinion
of the Court.

About nine o'clock in the forenoon of January 21, 1893, a
passenger train of the C., C., C. & St. L. R. R. Co., ran into
an open switch, striking some freight cars standing on it at

Wann station, which is in Woodriver township, adjoining that of Alton, and within a few miles of the city. Among the freight cars were several carrying tanks of coal oil and gasoline. By the collision the engineer was killed, some passengers injured and some cars, both freight and passenger, set on fire. The accident drew a crowd of people from Alton and the neighborhood to the scene. About noon one of the tanks exploded, and the burning oil was thrown upon the people standing around as spectators, by which quite a number were fatally and others severely injured. Appellee, who was the physician and surgeon of the railroad company for Alton township, was there attending professionally to passengers who had been hurt by the collision, and with other physicians immediately proceeded to render the medical and surgical attention required for the persons who were injured by the subsequent explosion. He ordered and obtained from the company a special train and had twenty of the sufferers conveyed to St. Joseph's Hospital at Alton, of which he was the regular physician and surgeon, and where they were thereafter attended by him and four other physicians. Six of these patients died of their injuries in the course of the first night and following day. Others died later, from the same cause, and still others were, from time to time, discharged. By the 12th of March, only seven remained under treatment. Until that time five physicians had regularly attended to those still there, but after that day only two, appellee and Dr. Halliborton, who continued to do so until the 14th day of June, 1893.

For these services and materials furnished in connection with them, appellee brought this suit in the Alton City Court, from which the venue was changed by agreement to the Circuit Court of Jersey County, where on trial without a jury he obtained a finding and judgment for $611.50, which included $78 for materials furnished.

The action was brought under Sec. 24 of the Pauper Act, which provides that " when any non-resident, or any person not coming within the definition of a pauper, of any county or town, shall fall sick, not having money or prop-

erty to pay his board, nursing and medical aid, the over-seer of the poor of the town or precinct in which he may be, shall give or cause to be given to him such assistance as they may deem necessary and proper, or cause him to be con-veyed to his home, subject to such rules and regulations as the county board may prescribe, and if he shall die, cause him to be decently buried." R. S., Ch. 107.

The declaration was in two counts, of which the first, after stating that the persons named, who were not paupers, but were unable to pay, etc., fell sick in the county of Madi-son, and that thereupon the overseers of the poor in the townships of Woodriver and Alton by virtue of the statute had undertaken to provide them with such medical attend-ance and medicines as were necessary and proper, averred that the plaintiff, " being requested and authorized so to do, did furnish to said parties such medical attendance and medicines," etc. The second, after stating the names and conditions of the parties as in the first, averred that in said county they " became and fell sick, and it became necessary to immediately furnish to said parties medical attendance and advice and medicines; that plaintiff, who is a regularly licensed physician, thereupon gave to said parties " such as they required, and that $800 was a reasonable charge therefor.

The plea was the general issue, with notice of intention to prove under it, in substance, that the parties named were injured by the explosion of oil tanks on a side track of the C., C., C. & St. L. R. R. Co., in Woodriver township; that on the same day they were removed to the hospital in Alton township; that the county supervisors had a competent physician to furnish, free of charge, the medical services required for them in Alton township, who was in said township during all the time of their alleged treatment; that plaintiff was during all that time the physician of said railroad company, and that his services in the premises were rendered on its behalf; that the survivors of those parties and the representatives of the deceased are prosecuting it for damages sustained by reason of said injuries; that said

parties were transferred by it from Woodriver to Alton township; and that plaintiff had been paid for all his services and medicines for which the defendant is in anywise liable by law to pay.

On the part of the defendant no evidence was offered, but the case was submitted on that introduced by plaintiff, and certain propositions of law asked to be held by the court.

It is insisted that no recovery could properly be had under the first count for want of proof that plaintiff was "requested and authorized" to furnish medical attendance, advice and medicines as alleged; and if it could under the second, it must be upon the theory that he parties were entitled to call upon the county for relief and that the urgency of their need did not admit of delay until request could be made of those appointed by law to furnish it, in which case the liability would be only for what was rendered and furnished until the proper authorities could be called upon to act. And it is contended that under this section, the overseer of the poor is the only person authorized to furnish the aid provided for, and he, only in accordance with the rules and regulations prescribed by the county board; for which proposition some cases are cited relating to the county's liability for aid furnished by private persons, upon their own motion, to technical "paupers." Rayburn v. Davis, 2 Brad. 548; Seagreaves v. City of Alton, 13 Ill. 372. We think that whatever bearing they have upon this case, which is brought under another provision, made for those who are not paupers, is clearly in support of appellee's claim as it is shown by the evidence. For they both except extreme cases, and if this was not shown to be one, none ever was or can be.

By the section referred to the legislature made it absolutely obligatory upon the county to make all necessary and proper provision for persons of the classes and in the condition of the sufferers in this case. It can not avoid the liability so imposed, by its own failure to appoint necessary agents or prescribe regulations as to the manner of doing it. County of Perry v. The City of Duquoin, 99 Ill.

486-8; County of Christian v. Rockwell, 25 Ill. App. 20. If the defense is that the provision was not made or not furnished in accordance with the rules and regulations prescribed by the board of supervisors, " it is incumbent on it (the county) to show that the county board prescribed reasonable rules and regulations on the subject, and what they were," as was said in the Perry Co. case, cited, pp. 487-8. Here there was no " defiance " by appellee of such rules and regulations, as in DeWitt Co. v. Rice, 91 Ill. 529. It does not appear that the county board of Madison county had prescribed any. At the time of the accident the overseer of the poor of Woodriver, where it occurred, was absent in Texas. Appellee, having finished the work for which he was sent there, was sitting in a passenger car waiting for an engine to go into town. He did not know that any one was injured by the explosion until a little boy came in and told him to come quick. He took possession of a freight car used as an express office, told somebody to run for cotton and buckets of water, and directed that none but those burned should be admitted. " They came in one after another until the car was full, screaming with pain. Some of them were stark naked. Some were burned from their heads to their toes—every particle of the surface burned." He made a temporary dressing and applied it to their burns. Many of them could not stand the shock of the extreme cold, so he asked Mr. Castle of the "Big Four " to give him a train as quick as he could, which was done, and he took them to Alton. He telephoned for the city ambulance, got express wagons and whatever he could get hold of, and had them conveyed to the hospital, where physicians (word having been sent in) were already gathered.

Such was the statement of appellee, and is given in almost his exact words. Any rule or regulation of the county board which would have required a moment's delay on his part, if he had been informed of it, and that the overseer of the poor was within speaking distance, would have been unreasonable, and he unworthy of a place in his profession if he had thought of it before acting. These people were

entitled to medical aid if it could be had, on the instant and at the county's expense. County of Christian v. Rockwell, *supra*.

Appellee's action was sanctioned and approved by the proper authorities as soon as it was known to them—by the overseer of the poor of Woodriver township, immediately on his return from Texas, and by the overseer of Alton township immediately after the patients were brought to Alton. He found the doctors attending to them and sanctioned everything they did; told two of them to "do everything they could to help these people out;" and says, "if there had been more doctors I would have liked it—there wasn't doctors enough."

Appellee's attendance and services continued to be necessary and proper until June 14th. He continued to attend some thereafter, without charge. The charge he made and sued for was reasonable—he says hardly more than one-sixth of the usual charge in like cases, where the patient is treated at his home and able to pay. He did not render any of the service sued for on behalf of the railroad company. It owed these unfortunates no contract duty. He was not directed by the company, nor required by his engagement as its physician and surgeon to attend to them. The evidence of the  clear, positive and undisputed.

re was no material error in refusing or modifying the propositions of law submitted on behalf of appellant; and if there was, the finding was required by the evidence. The judgment will therefore be affirmed.